In re **MISSOURI PROPERTIES, LTD.,**
and Billy W. Schell, Debtors.

**MILLER & MILLER AUCTIONEERS,
INCORPORATED, Plaintiff,**

v.

**RITCHIE BROTHERS AUCTIONEERS
INTERNATIONAL, L.P.,** Great Plains
Equipment, Inc., Clark L. Besack, Billy
W. Schell, Great Plains Equipment, Inc.
Supplemental Retirement Plan, Missouri Properties Ltd., and West Texas
Pipeline, Defendants.

Bankruptcy Nos. 96–30376, 96–30461.
Adversary No. 96–03041.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Dec. 16, 1996.

Murray Camp, Friedman, Yount & Suder, Fort Worth, TX, J. Kevin Checkett, Checkett & Pauly, Carthage, MO, for Plaintiff.

James B. Barlow, Barlow & Garsek, Fort Worth, TX, for Ritchie Brothers.

Mack Ed Swindle, Fort Worth, TX, for Great Plains Equipment, Clark L. Besak, Billy W. Schell, Great Plains Equipment Supplemental Retirement Plan, Missouri Properties and Western Pipeline.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

This adversary proceeding was referred to this Court on September 25, 1996, pursuant to the Order of Referral to the United States Bankruptcy Court for the Western District of Missouri. Said adversary proceeding was received by the United States District Court for the Western District of Missouri pursuant to an order transferring venue filed by the United States District Court for the Northern District of Texas, Fort Worth Division (the "Texas Federal District Court"). A brief explanation of the procedural posture of this proceeding is indicated.

### FACTUAL BACKGROUND

Plaintiff Miller & Miller Auctioneers, Inc. ("plaintiff" or "Miller & Miller") brought a civil Complaint (the State Court Lawsuit') against defendants in the 236th District Court of Tarrant County, Texas (the "Texas State District Court") on June 7, 1993. One of the original defendants, Great Plains Pipeline Construction, Inc. (Case No. 593–50630) was placed in involuntary bankruptcy on October 22, 1993, in the United States Bankruptcy Court for the Northern District of Texas. Billy Schell and Clark Besack were the principal shareholders of Great Plains Pipeline Construction, Inc.[1] The State Court Lawsuit was removed to the Texas Federal District Court and referred to the bankruptcy court. After Great Plains Pipeline Construction, Inc. was dismissed with prejudice from the State Court Lawsuit, the action was remanded to the Texas State District Court. A jury verdict was rendered in favor of Miller & Miller on May 8, 1996, awarding plaintiffs judgment in the total amount of $1,822.676.

On June 12, 1996, Great Plains Equipment, Inc. (Case No. 596–50640) and West Texas Pipeline Construction, Inc. (Case No. 596–50644) filed Chapter 7 bankruptcy petitions in the United States Bankruptcy Court for the Northern District of Texas. Plaintiff attempted to execute on its judgment by noticing a deposition of defendant Billy Schell. Defendant Great Plains Equipment,

---

1. On December 13, 1996, after oral argument in this matter, the Court was notified of the death of Billy Schell. This Memorandum Opinion and accompanying Order assumes that the Chapter 11 bankruptcy cases of Missouri Properties, Inc. and Billy W. Schell will remain in this Court with or without the appointment of a trustee. 11 U.S.C. § 1104(a)(1).

Inc. Supplemental Retirement Plan ("GPSRP") filed a motion to quash the deposition notice with the Texas State District Court and such motion was denied. Defendants then filed an application for a Writ of Mandamus in the Second Court of Appeals for the State of Texas (the "Court of Appeals") alleging that the automatic stay in Great Plains Pipeline Construction, Inc.'s involuntary bankruptcy applied to Billy Schell individually. The Court of Appeals heard oral argument in this mandamus proceeding, but had not ruled on the application before removal. Defendants also filed a motion for a new trial in the Texas State District Court which had not been ruled prior to the Notice of Removal.

After judgment, while the motion for a new trial was pending, and after the oral argument on defendant's application for writ of mandamus to stop collection procedures, defendants Missouri Properties Limited (Case No. 96–30376) and Billy Schell (Case No. 96–30461) filed bankruptcy in the United States Bankruptcy Court for the Western District of Missouri on June 13, 1996, and July 23, 1996, respectively. As a consequence of the bankruptcy filings, defendants obtained a stay of collection proceedings against all of the defendants save Clark Besack and GPSRP without being required to post a bond, as they would have had to do in Texas State District Court.

On August 1, 1996, Defendant GPSRP removed the state court proceedings, consisting of a Motion for a New Trial and the mandamus proceeding in the Court of Appeals, to the Texas Federal District Court. Although GPSRP is not itself in bankruptcy, the basis for such removal was the bankruptcy cases filed by Great Plains Equipment, Inc., West Texas Pipeline Construction, Inc., Missouri Properties Ltd., and Billy W. Schell. 28 U.S.C. § 1452. Thereafter, on August 1, 1996, defendant GPSRP filed a Motion to Transfer Venue &/Or Request for Reference to the Bankruptcy Court. Plaintiffs filed a Motion to Abstain and Remand on August 12, 1996. Defendants then filed a Response to plaintiff's Motion to Abstain and Remand on August 15, 1996. The Texas Federal District Court granted defendant's Motion to transfer venue and denied plaintiffs' Motion to Abstain and Remand on August 16, 1996, the day after defendants' response was filed. No hearing was conducted and the ruling was based solely on the pleadings. The result of all this procedural maneuvering by the defendants is that this Bankruptcy Court in the Western District of Missouri has been placed in the untenable position of ruling on a Motion for a New Trial, based upon the alleged errors of a Texas trial court, interpreting Texas state law, as well as ruling on the writ of mandamus which was filed in the Texas Court of Appeals.

On September 18, 1996, plaintiff filed a Motion to Abstain and Remand in the United States District Court for the Western District of Missouri (the "Missouri Federal District Court"). Such motion, which was pending at the time of referral, is the subject of this Memorandum Opinion. Miller & Miller argue that either the doctrine of mandatory or permissive abstention requires this Court to abstain from exercising jurisdiction over the removed actions. Alternatively, plaintiff asked this Court to remand the removed action on equitable grounds.

Defendants filed an Amended Rule 50 And/Or Rule 59 Motion in the Missouri Federal District Court on September 19, 1996, seeking alteration or amendment of the judgment in the State Court Lawsuit. Defendant states that "this Amended Motion amends, and incorporates by reference, these Defendants Motion to Modify, Correct, or Reform the Judgment &/or for A New Trial ... filed in this action on June 20, 1996, in Texas State Court." Doc. # 5, pg. # 1.

Defendants responded to the Motion to Abstain and Remand on October 11, 1996. After reviewing the pleadings, this Court, on November 7, 1996, issued an Order to Show Cause why this proceeding should not be remanded to the Texas State District Court for lack of subject matter jurisdiction. A hearing was held on the motion and the Order to Show Cause on December 10, 1996.

This Memorandum Opinion follows the oral argument presented by the parties at that hearing.

## DISCUSSION

I am going to abstain in this removed proceeding and remand it to the Texas State Court system where it belongs. I find that the Texas Federal District Court had no jurisdiction to do anything other than remand the case to the Texas State District Court. Indeed, this case takes the idea of forum shopping to dizzying new heights. Rather than trying to gain an advantage at the outset of a proceeding, defendants waited until after a verdict was rendered against them in state court, and then removed the action to Federal Court for ruling on post-trial motions and appeals.

 The procedure for removing claims related to bankruptcy cases is set forth in a statute entitled "Removal of claims related to bankruptcy cases." 28 U.S.C. § 1452. Section 1452 provides:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such government unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452. Thus, the statute permits removal only if the district court has jurisdiction of the claim or cause of action under section 1334 of title 28. 28 U.S.C. § 1452(a). Section 1334 gives District Courts original but not exclusive jurisdiction of all civil proceedings arising under or arising in specific provisions of the Bankruptcy Code. It also grants original but not exclusive jurisdiction to nonbankruptcy causes of action which are related to a pending bankruptcy case. 28 U.S.C. § 1334(b).[2] As indicated, the Federal Courts have original, but not exclusive, jurisdiction over lawsuits in which one or more parties happen to be in bankruptcy. Indeed, section 1334(c) of Title 28 of the United States Code sets out certain circumstances in which the District Court, or, by reference the Bankruptcy Court, may abstain in favor of the state courts, 28 U.S.C. § 1334(c)(1), and other circumstances in which it must so abstain. 28 U.S.C. § 1334(c)(2). Section 1334(c)(2), which deals with "mandatory abstention" provides as follows:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. 1334(c)(2) (emphasis added). As stated, this provision requires mandatory abstention. In other words, if the six elements set forth in section 1334(c)(2) exist, the district court does not have jurisdiction to decide the proceeding. *Things Remembered, Inc. v. Petrarca*, ── U.S. ──, ──, n. 1, 116 S.Ct. 494, 499, n. 1, 133 L.Ed.2d 461 (1995) (Ginsburg, J. concurring); *Burke v. Donington, Karcher, Salmond, Ronan & Rainone (In re Donington, Karcher, Salmond, Ronan & Rainone)*, 194 B.R. 750, 757 (D.N.J.1996). The elements which a court

---

2. Section 157 of the United States Code establishes procedures authorizing a District Court to refer bankruptcy matters to the Bankruptcy Court for that District. 28 U.S.C. § 157(a).

must ascertain prior to determining if it is prohibited from deciding the claim or cause of action are: (1) whether a timely motion is made; (2) whether the claim or cause of action is based upon state law; (3) whether the claim or cause of action is related to a bankruptcy case, but did not arise in or under the bankruptcy case; (4) whether the only basis for original jurisdiction in federal district court is the bankruptcy filing; (5) whether the action has already commenced in state court; and (6) whether the action can be timely adjudicated in the state court system. 28 U.S.C. § 1334(c)(2). I believe the facts of this proceeding can be readily applied to the first four elements. Plaintiffs filed the Motion to Abstain and Remand on September 18, 1996. This case was received by the Missouri Federal District Court, following transfer from the Texas Federal District Court, on September 12, 1996. I find under the complicated procedural circumstances of this case, that such motion was timely, satisfying the first element.

This adversary proceeding is based upon a Complaint alleging breach of contract, fraud, violation of the Texas Deceptive Trade Practices/Consumer Protection Act, and fraudulent conveyance. The parties do not dispute that these are all state law causes of action, thus satisfying the second element of mandatory abstention.

The third element requires a finding that the state court case is a noncore proceeding. Core proceedings are those which either arise in a bankruptcy case, or arise under a specific provision of the Bankruptcy Code. See 28 U.S.C. § 157(b). As to core proceedings only, a Bankruptcy Court may enter a final judgment. Id. Defendants presented oral argument at the hearing on this matter that the Texas State Court Case is a core proceeding, thus, precluding mandatory abstention. Defendants cite three subsections of 28 U.S.C. § 157(b)(2) to show that the Texas State Court Case is a core proceeding. Defendants claim that the Texas State Court Case concerns the allowance or disallowance of claims against the estate, and, thus, can be said to "arise" in the Chapter 11 cases. 28

U.S.C. § 157(b)(2)(B). I disagree. The Bankruptcy Code sets forth specific procedures for creditors to file claims against an estate, for the estate to object to such claims, and for the Bankruptcy Court to determine whether such claims should be allowed and, if so, in what amount. Fed. R. Bankr.P. 3001–3008. In the event a state court case were not pending, those procedures would be used to resolve the dispute between these defendants and plaintiff. But, there was an action pending, and it is the removal of that action, not a claim objection, which is at issue here. Since this suit was pending—and had even been tried—when these Chapter 11 cases were filed, it cannot be said that such suit arose in the Chapter 11 cases.

Next, defendants claim that they filed a counterclaim for attorney's fees in the Texas State Court Case, and that counterclaim makes this a core proceeding. 28 U.S.C. § 157(b)(2)(C). Subsection (C) provides that a counterclaim by the estate against persons filing claims against the estate is a core proceeding. In so doing, the statute insures that claim's litigation encompasses all disputes between the parties. As stated, however, this is not claim's litigation in which the debtor responded to a proof of claim by filing an objection and counterclaim. Instead, the counterclaim was filed in a state court proceeding before the bankruptcy cases were ever filed. Such counterclaim did not arise in these Chapter 11 cases.

Finally, defendants argue that the Texas State Court Case will affect the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(0). This provision gives a Bankruptcy Court authority to discharge debt, or to modify the terms of repayment. What the Court is being asked to do here is not to adjust the debtor-creditor relationship, but to determine if the Texas State District Court acted properly in finding that such a relationship exists as between these parties.

Defendants next cite a number of cases apparently for the premise that a proceeding initiated in a state court which has any relationship to a bankruptcy case is a core pro-

ceeding. Factually, each of these cases can be distinguished. In *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656 (4th Cir.1985), a declaratory judgment action was filed in state court to determine an employee's right in a pension fund after her employer filed a bankruptcy petition. The Chapter 7 trustee filed an adversary proceeding in bankruptcy court to determine the various rights to the pension funds. The state court case was then removed to the bankruptcy court. Clearly, in *Coleman Furniture* the need for the declaratory judgment arose as a result of the bankruptcy filing. Furthermore, any pension funds not distributed to employees became property of the bankruptcy estate. In this case, the bankruptcy filings were the result of the state court judgment. The Texas State Court judgment has no bearing on what property becomes property of the bankruptcy estate.

In *Mills v. Mills (In re Mills)*, 163 B.R. 198 (Bankr.D.Kan.1994), the issue is the dischargeability of a debt which resulted from a dissolution proceeding. There is no question that a proceeding to determine the dischargeability of a debt is a core proceeding. 28 U.S.C. § 157(b)(2)(I). This case, however, is not a dischargeability proceeding. Defendants are asking this Court to sit as an appellate court over a state court judgment, issued after a jury verdict, in a case based on state law tried prior to the bankruptcy filing.

In *In re Becker*, 136 B.R. 113 (Bankr. D.N.J.1992), the issue was whether debtor's pension and profit sharing plan, which had not yet been disbursed in debtor's pending dissolution proceeding, was property of the estate. The nondebtor spouse asked the bankruptcy court to abstain until the distribution in the divorce had been completed. The bankruptcy court held that the determination of the bankruptcy estate's interest in the property jointly owned by a debtor and nondebtor spouse was a core proceeding, therefore, the court did not have to abstain. In this case, however, the state court litigation is not determinative of the debtor's interest in property. The judgment is based upon the jury's finding that defendants vio-

lated the Texas Deceptive Trade Practices/Consumer Protection Act. This judgment, as such, does not alter defendants interest in any property which became property of the bankruptcy estate. The judgment serves only to give plaintiff a claim in the various bankruptcy cases.

In *Tidwell Industries, Inc. v. Delmarva Homes, Inc. (In re Tidwell Industries, Inc.)*, 87 B.R. 345 (Bankr.E.D.Pa.1988), the bankruptcy court stayed an adversary proceeding which duplicated a prior state court action. The dispute, the state court action, and the adversary proceeding arose postpetition. The bankruptcy court found that a postpetition dispute involving postpetition dealings between the Chapter 11 debtors and defendants is a core proceeding. Nonetheless, the bankruptcy court stayed the adversary proceeding to allow debtors to proceed in state court since the state court proceeding was filed nine months before the adversary proceeding. As stated before, the state court lawsuit in this proceeding was brought to judgment before the bankruptcy cases were filed.

In *Baptist Medical Center of New York v. Singh (In re Baptist Medical Center of New York)*, 80 B.R. 637 (Bankr.E.D.N.Y.1987), all of the proceedings, including the filing of the state court action, occurred postpetition. The dispute clearly arose under the bankruptcy case. Here, the dispute arose, and the litigation commenced, prior to the bankruptcies.

In *Allegheny, Inc. v. Laniado Wholesale Co. (In re Allegheny)*, 68 B.R. 183 (Bankr. W.D.Pa.1986), debtors brought an action in the bankruptcy court seeking to collect on accounts receivable. The defendants moved to dismiss for lack of *in personam* jurisdiction. The court held that a debtor's action to collect on accounts receivable is basically a turnover proceeding, thus a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). Defendants are not contesting in this matter that plaintiff possesses any property that is property of the bankruptcy estate, subject to turnover.

In *Duck v. Munn (In re Mankin)*, 823 F.2d 1296 (9th Cir.1987), *cert. denied, Munn v. Duck*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988), the trustee brought an action to avoid an alleged fraudulent conveyance. Section 157(b)(2)(H) states an action by the trustee to avoid a fraudulent conveyance is a core proceeding. There is no specific reference in 28 U.S.C. § 157(b)(2) that conveys core status on this proceeding. Furthermore, the debtors are defendants in the Texas State District Court case. Section 157(b)(2)(H) by its plain language states the action to avoid a fraudulent conveyance must be brought by the trustee.

In *Flint v. Speir Ins. Agency, Inc.*, 33 B.R. 814 (N.D.Ga.1983), debtor was a defendant in a state court action filed on March 3, 1982. On March 17, 1982, the state court entered a consent decree in settlement of the litigation, but required an accounting. *Id.*, at 815. Debtor then filed a bankruptcy petition on May 26, 1982, and removed the state court case to the bankruptcy court on June 23, 1982. Plaintiff moved to remand, and said motion was denied. First, the court found that this contract action was related to the bankruptcy case, not a core proceeding. *Id.*, at 816. Next the court found that the results of the enforcement of the consent order had a direct bearing on the estate. *Id.*, at 815. The court, therefore, denied plaintiff's motion to remand for lack of subject matter jurisdiction. The district court, on appeal, held that, even though a decision to remand or not remand is unreviewable pursuant to 28 U.S.C. § 1478(a) and (b), said section does not prohibit review of whether the bankruptcy court had subject matter jurisdiction. *Id.* While defendants cited this case for the premise that a bankruptcy court has jurisdiction over any state court proceeding that is still pending, the case holds that a contract action, commenced prior to the bankruptcy filing, is a noncore proceeding. Moreover, an accounting is not an appeal of the consent

judgment or a motion for a new trial in the state court case. The bankruptcy court was not asked to alter or amend the judgment of the state court. It was asked only to implement what had already been decided by consent between the parties.

The above cases cited by defendants address whether a proceeding is core. They do not define whether a proceeding is related to a bankruptcy case. A case is related to a bankruptcy case if it "involves state law issues which exist independently from debtor's Chapter 11 reorganizations, and cannot be said to be an integral part of the bankruptcy." *Burke v. Donington, Karcher, Salmond, Ronan & Rainone (In re Donington, Karcher, Salmond, Ronan & Rainone)*, 194 B.R. 750, 759 (D.N.J.1996). A related proceeding is not a core proceeding. Without the consent of the parties, a bankruptcy judge is not empowered to enter final judgment in a noncore proceeding. 28 U.S.C. § 157(c). Since noncore proceedings do not arise in title 11 cases, or under a specific provision of the Bankruptcy Code, the Bankruptcy Court is required to defer to a pending state court case if the other requirements for mandatory abstention are met. This case was tried in state court, a jury verdict rendered, and judgment entered on May 28, 1996. The bankruptcy cases at issue were not filed until after the judgment was entered.[3] The debtors in these bankruptcy cases are defendants in the Texas State Court lawsuit, therefore, said lawsuit is related to the bankruptcy case, satisfying the third element of section 1334(c)(2).

The fourth element of mandatory abstention is that the only basis for Federal jurisdiction is the bankruptcy filing. There is no complete diversity of citizenship in this proceeding as the plaintiff and several of the defendants are Texas entities. There is no federal question involved but for the bankruptcy filings. Therefore, no district court

---

3. *In re Great Plains Equipment, Inc.* (Case No. 596–50640) was filed June 12, 1996, in Lubbock, Texas. *In re West Texas Pipeline Construction, Inc.* (Case No. 596–50644) was filed June 12, 1996, in Lubbock, Texas. *In re Missouri Proper-*

*ties Ltd.* (Case No. 96–30376) was filed June 13, 1996, in Kansas City, Missouri. *In re Billy W. Schell* (Case No. 96–30461) was filed July 23, 1996, in Kansas City, Missouri.

has original jurisdiction over this matter save what, if any, jurisdiction is conferred by section 1334. Thus, the fourth element is satisfied.

There is really no dispute as to the fifth element of mandatory abstention. Section 1334(c)(2) requires that the state court proceeding be commenced in a state forum of appropriate jurisdiction. Clearly, the proceeding had been commenced. In fact, the matter had been tried to a jury and a verdict rendered. Defendants had filed a motion for a new trial and also had pending a writ of mandamus to stop execution on the judgment. The Texas Court of Appeals had heard oral argument on the writ. The fifth element of section 1334(c)(2) is satisfied.

Finally, section 1334(c)(2) requires a finding that the action can be timely adjudicated in the appropriate state forum. At the hearing in this Court defendants argued that the case could not be timely adjudicated in the Texas State District Court because they had filed a fifty-four page motion for a new trial, that the appeal process would be laborious, and that defendants would be subject to the injunctive relief the state court had granted to plaintiffs. Defendants also conceded that they would have to post both a "Cost Bond" and a Supersedeas Bond if this proceeding is remanded to state court. Defendants pointed out to the Texas Federal District Court that since trial had been had, fact findings made, and judgment rendered, all that remained to be done was to review the judgment in light of the fact findings and applicable law to determine whether the judgment was proper. Therefore, they argued, the matter could be expeditiously determined in a federal court, and the Texas Federal District Court apparently concluded it should be this Court. The issue is not, however, whether the matter can be timely adjudicated here; the issue is whether the matter can be timely adjudicated in the Texas State District Court.

This sixth element of mandatory abstention arises out of comity principles. Comity requires a federal court to show:

a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways ... The concept [of comity] does represent ... a system in which there is sensitivity to the legitimate interest of both State and National Governments in which the National Government ... always endeavors [to protect federal rights and interests] ... in ways that will not unduly interfere with the legitimate activities of the States.

*Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 10, 107 S.Ct. 1519, 1525–26, 95 L.Ed.2d 1 (1987) (citing *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971)). A legitimate activity of a state is to enforce the orders or judgments of its courts. *Id.,* 481 U.S. at 12–13, 107 S.Ct. at 1527. In *Lomas & Nettleton Co. v. Warren (In re Warren),* 125 B.R. 128 (E.D.Pa.1991), the federal district court affirmed the bankruptcy court decision to remand a case to the Pennsylvania court from which it had been removed. The district court held that "[t]he court that originally entered a particular judgment should be accorded, as a matter of comity, the right to determine whether relief from its own judgment should be granted." *Id.,* at 133. The Texas State Court deserves no less consideration. In *First Federal Savings and Loan Association v. Drake (In re Ramada Inn–Paragould General Partnership),* 138 B.R. 63 (Bankr.E.D.Ark.1992), the Honorable Mary D. Scott stated that the removal of a case to the bankruptcy court after a matter has proceeded to judgment in state court is "manifestly inappropriate." *Id.,* at 65. Judge Scott found that after a judgment has been entered there is no civil action pending within the meaning of rule 9027 of the Federal Rules of Bankruptcy Procedure. *Id.,* at 64. Further, Judge Scott found that if a case is removed after it has already proceeded to judgment, there is nothing further to litigate, and no decision for a trial court to render, therefore, "justice, judicial economy, and le-

gal doctrine prevent this court from rehearing the matter." *Id.,* at 65. A removal with no purpose save to circumvent the state court appellate process is inappropriate. *First Federal Savings and Loan Association v. Drake (In re Ramada Inn—Paragould General Partnership),* 137 B.R. 31, 33 (Bankr.E.D.Ark.1992).

Debtor's counsel contended at oral argument that the failure to immediately resolve this litigation will somehow slow down disposition of these Chapter 11 cases. That is not so. Apart from the judgment in favor of plaintiff, Missouri Properties, Inc.'s schedules show debts far in excess of assets. Even if that debtor is engaged in some business which can be reorganized under Chapter 11, it can propose a Plan of Reorganization (the "Plan") which provides payment to all creditors ultimately found to hold valid claims. Such a Plan is, thus, not dependent on first resolving the Texas litigation. While I certainly encourage the Texas Courts to resolve this matter quickly, the progress of the Missouri Properties, Inc.'s bankruptcy case is not dependent on such resolution.

The Texas State District Court is in a far better position to rule on defendants' motion for a new trial than is this Court. The state court judge is already familiar with the facts of this case. The issues involved are all state law issues. Surely, the trial court which heard the evidence in this matter is in a position to rule on a motion for new trial in a more timely manner. For all of these reasons, I find that the sixth element of mandatory abstention has been met. I have no discretion under section 1334(c)(2) but to abstain, as I do not have jurisdiction over this matter.

Ordinarily, once this Court determines that the factors for mandatory abstention are all present, it would simply abstain, and remand the proceeding to the appropriate state court. Here, though, there is a complication in that the Texas Federal District Court previously denied plaintiff's motion requesting just that relief. Such denial was contained in the same Order in which the Texas

Federal District Court also authorized a change of venue to this district. The issue, thus, is whether that portion of the Texas Federal District Court Order denying the motion to abstain and remand is controlling here.

Rule 60(b)(4) of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 9024 of the Federal Rules of Bankruptcy Procedure provides that

> (b) On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [if] ... (4) the judgment is void.

Fed. R. Bankr.P. 9024; Fed.R.Civ.P. 60(b)(4). A judgment is void if the court that rendered the judgment or order lacked jurisdiction over the subject matter. *Thomas, Head and Greisen Employees Trust v. Buster,* 95 F.3d 1449 (9th Cir.1996); *New York Life Ins. Co. v. Brown,* 84 F.3d 137 (5th Cir.1996); *Wilmer, Jr. v. Board of County Commissioners of Leavenworth County,* 69 F.3d 406, 409 (10th Cir.1995). Moreover, while Rule 60(b)(4) requires a motion, the Court may raise the issue of subject matter jurisdiction at any time *sua sponte.* *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939); *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 290, 58 S.Ct. 586, 591, 82 L.Ed. 845 n. 10 (1938); *McLearn v. Cowen & Co.,* 660 F.2d 845, 848 (2nd Cir.1981); *Cospito v. Califano,* 89 F.R.D. 374, 379 (D.N.J.1981); **5A Charles Alan Wright & Arthur R. Miller, Federal Practice a Procedure: Civil,** § 1350, at 202 (2nd ed.1990). This Court, on its own motion, may set aside a void judgment or order "'provided notice has been given of the contemplated action and the party adversely affected has been given an opportunity to be heard.'" *McLearn v. Cowen & Co.,* at 848 (quoting **11 Charles Alan Wright et. a. Federal Practice & Procedure: Civil,** § 2862, at 325 (2nd ed.1995)).

Defendants point out that there are cases which allow removal after judgment

has been entered in state court, and prior to a final determination on the merits. *See, e.g., Kansas Public Employees Retirement System v. Reimer & Koger Assoc., Inc.,* 77 F.3d 1063 (8th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 359, 136 L.Ed.2d 250, (1996); *Resolution Trust Corporation v. Bakker,* 51 F.3d 242 (11th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 1875, 135 L.Ed.2d 172 (1996); *Bullion Serv. Inc. v. Valley State Bank,* 50 F.3d 705 (9th Cir. 1995); *Resolution Trust Corporation v. Bayside Developers,* 43 F.3d 1230 (9th Cir.1995); *First RepublicBank v. Norglass, Inc.,* 958 F.2d 117 (5th Cir.1992); *Federal Deposit Insurance Corp. v. Sellards,* 731 F.Supp. 1300 (N.D.Tex.1990). I note that in the cases cited above either the Federal Deposit Insurance Corporation (the "FDIC") or the Resolution Trust Corporation (the "RTC") was a party. Such removals were based upon specific statutory language in the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") which has been found to authorize removal at any stage before a final judgment has been entered. 12 U.S.C. §§ 1441a (1), 1819(b)(2)(B), and 1821(d)(13)(B) The rationale for such removal is held to be Congress' intent that all cases involving the FDIC and the RTC be heard and decided in federal court. *Bayside Developers,* 43 F.3d at 1239. Such intent cannot be attributed to bankruptcy cases, however, since Congress included the mandatory abstention doctrine in section 1334(c)(2). *See* 1 **Collier on Bankruptcy** § 3.01, at 3–82 (Lawrence P. King, ed. 15th ed.1996). Section 1334 grants district courts original, but not exclusive, jurisdiction over proceedings arising under or related to bankruptcy cases, and it provides that courts must abstain in certain circumstances. 28 U.S.C. § 1334(a). Congress paid no such deference to comity in enacting FIRREA. I find the circumstances mandating abstention exist in this proceeding.

Defendants argue that the denial of plaintiffs' motion to abstain and remand by the Texas Federal District Court is now law of the case, and this Court has no discretion but to sit as a Court of Appeals over a Texas State Court decision. However, defendants' law of the case argument must fail. In *Wilmer v. Board of County Commissioners of Leavenworth County,* the Court discussed at length the law of the case doctrine in light of a challenge to a district court's jurisdiction. 69 F.3d 406, 409–10 (10th Cir.1995). The Court found that jurisdictional questions, like other issues, must actually be decided, before law of the case is involved. *Id.,* at n. 3. The Texas Federal District Court never determined specifically whether it had subject matter jurisdiction over this proceeding in light of section 1334(c)(2). Doc. $ 1. I, therefore, find that the law of the case has no application to this proceeding. The *Wilmer* court found that "insofar as subject matter jurisdiction is concerned ... a federal court must ... satisfy itself of its power to adjudicate in every case and at every stage of the proceedings ..." *Id.,* at 409 (citations omitted). *See also Robinson v. Michigan Consolidated Gas Co., Inc.,* 918 F.2d 579, 582 (6th Cir.1990); *First Federal Savings and Loan Association v. Drake (In re Ramada Inn–Paragould General Partnership),* 138 B.R. 63, 65 (Bankr.E.D.Ark.1992). I find that I have no power to adjudicate this matter, nor did the Texas Federal District Court have jurisdiction to do anything other than to remand this proceeding to the Texas State District Court.

Defendants next argue that the decision of the Texas Federal District Court to deny plaintiff's motion to abstain and remand is now *res judicata. Res judicata* is applicable only if the following four conditions are satisfied: (1) the first decision must have been a final judgment on the merits; (2) the first decision must have been based upon proper jurisdiction; (3) both decisions must involve the same cause of action; and (4) both decisions must involve the same parties. *Waller v. Groose,* 38 F.3d 1007, 1008 (8th Cir.1994). *Res judicata* is not indicated if the forum which rendered the prior order lacked jurisdiction over the subject matter of the claim in controversy. *Wolf v. Gruntal & Co., Inc.,* 45 F.3d 524, 527 (1st Cir.1995);

*Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir.1992); *Cherokee Exp. v. Cherokee Exp., Inc.*, 924 F.2d 603, 607 (6th Cir.1991); *Gargallo v. Merrill, Lynch, Pierce, Fenner, & Smith, Inc.*, 918 F.2d 658, 663 (6th Cir.1990); *Anderson v. Pinkett*, 439 F.2d 619, 620 (C.A.D.C.1971); *Lupo v. Voinovich*, 858 F.Supp. 699, 706 (S.D.Ohio 1994); *D'Addino v. Dulles*, 136 F.Supp. 417, 419 (D.C.N.Y.1954). Therefore, there is no merit to defendants' argument that the Order from the Texas Federal District Court is *res judicata* as to my conclusion in this proceeding.

■ Defendants again cite a number of cases for the premise that a judgment entered under a mistaken assumption of jurisdiction is not a void judgment, it was just entered in error and is subject to the appeal process. In *Ingvoldstad v. Kings Wharf Island Enterprises, Inc.*, 593 F.Supp. 997 (D.C.Virgin Islands 1984), *aff'd*, 770 F.2d 1071 (3rd Cir.1985), a specific statute gave the federal court general jurisdiction over an action for forcible entry and detainer. The district court then referred the matter to an arbitration panel for fact finding only, over the objection of the plaintiff. When the district court found in favor of the defendant, plaintiff moved to vacate the judgment as being void. The district court found that "[e]very Court of general jurisdiction has power to determine whether the conditions essential to its exercise of jurisdiction exist." *Id.*, at 1003. The court then found that it must distinguish a judgment based on the total absence of jurisdiction from a judgment based on an erroneous exercise of jurisdiction. *Id.* A judgment based upon a total absence of jurisdiction is void. *Id.* A judgment based upon an erroneous exercise of jurisdiction is appealable. *Id.* In *Ingvoldstad* the court found that the district court had possibly erroneously exercised its jurisdiction by entering judgment when the parties to the arbitration had not consented thereto. However, such an error was subject to correction on appeal, and furthermore, plaintiff had consented to such action at the time. In this case there is a total absence of jurisdiction pursuant to 28 U.S.C. § 1334(c)(2), therefore, the judgment is void.

In *National Developers, Inc. v. Ciba–Geigy Corp. (In re National Developers, Inc.)*, 803 F.2d 616 (11th Cir.1986), the court found that the district court, therefore, the bankruptcy court, did not have subject matter jurisdiction over a matter improperly removed from a state court action. The Court of Appeals vacated the order of the district court denying remand. *Id.*, at 620. Likewise, in this case the removal from the Texas State District Court was improper because all of the elements of mandatory abstention were present. Therefore, there was a total absence of jurisdiction, and the Texas Federal District Court could not deny plaintiff's Motion to Remand and Abstain.

Defendants make a very general argument, based upon a Supreme Court decision, that one federal court may not collaterally assail another federal court's determination of the question of its jurisdiction. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). In *Chicot County* a creditor owned bonds which it acquired prior to debtor's bankruptcy and confirmed plan of reorganization. Subsequently, in another case altogether, a statute, which was instrumental in *Chicot County's* reorganization, was found to be unconstitutional. The creditor then brought an action to collect on the bonds. The Supreme Court held that a bankruptcy decree is not subject to collateral attack where that provision is subsequently declared unconstitutional in another case. *Id.*, at 376, 60 S.Ct. at 319–20. This Court is not collaterally attacking another case in this matter. This is the same case, and a finding of the absence of subject matter jurisdiction as to this case is not a collateral attack.

■ Finally, defendants argue that a bankruptcy court, as an Article I court, cannot issue a nonreviewable order which binds an Article III court. In other words, defendants contend that this Court cannot contravene the order of the Texas Federal District Court denying remand, and transferring the case to the Western District of Missouri. Defendants cite *Goerg v. Parungao (In re*

*Goerg*), 930 F.2d 1563 (11th Cir.1991) for that premise. The Court in *Goerg* held that the bankruptcy court did not have the authority to enter an unreviewable abstention order. *Id.*, at 1565. As a matter of fact, *Goerg* deals with abstention pursuant to 11 U.S.C. § 305, which deals with abstaining in the bankruptcy case, not a proceeding related to the bankruptcy case. I also note that section 305(c) has since been amended to provide that a decision to abstain or not to abstain is not reviewable by the court of appeals or the Supreme Court of the United States. 11 U.S.C. § 305(c). Nothing prohibits review of the bankruptcy court's decision by the district court. Furthermore, my decision is based upon the jurisdictional requirements of 28 U.S.C. § 1334. Section 1334(d) provides:

> (d) Any decision to abstain or not to abstain made under this subsection (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals ... or the Supreme Court of the United States.

28 U.S.C. § 1334(d). Thus, my decision to abstain and remand this proceeding to the Texas State District Court is reviewable by the United States District Court for the Western District of Missouri.[4]

▓▓▓▓ Alternatively, I find that this Court is barred by the *Rooker–Feldman* doc-

trine from exercising subject matter jurisdiction over this adversary proceeding. *Goetzman v. Agribank, FCB (In re Goetzman)*, 91 F.3d 1173, 1177 (8th Cir.1996). The *Rooker–Feldman* doctrine directs that "lower federal courts lack jurisdiction to engage in appellate review of state court determinations." *Id.* In *In re Alpern*, 191 B.R. 107 (N.D.Ill.1995), the Court held:

> It is clear that this court [the District Court] and the bankruptcy court have no power to vacate a state court judgment. Any attempt to do so would run afoul of the *Rooker–Feldman* doctrine, which teaches that the lower federal courts have no jurisdiction to reexamine the decisions of state tribunals in civil litigation.

*Id.* at 110. The *Rooker–Feldman* doctrine construes 28 U.S.C. § 1257 as a bar to direct review in lower federal courts of a decision reached by the highest state court.[5] *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 606, 109 S.Ct. 2037, 2039, 104 L.Ed.2d 696 (1989). *See also Musslewhite v. State Bar of Texas*, 32 F.3d 942, 946 (5th Cir.1994), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995) (where the Court stated the general rule of *Feldman* is "federal courts do not have subject matter jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); *Aaris-*

---

**4.** I note that this argument is weakened by the Supreme Court's holding in *Celotex Corporation v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The bankruptcy court issued an order staying all proceedings against a chapter 11 debtor, including proceedings where a matter was on appeal and a supersedeas bond had been posted by debtor. A creditor in the case moved in district court to enforce the supersedeas bond after the debtor lost the appeal. The district court granted execution on the bond. The debtor appealed and the Court of Appeals for the Fifth Circuit affirmed. Debtor petitioned for a writ of certiorari. The Supreme Court granted the writ and held that the question of whether a judgment creditor was entitled to immediate execution on a bond against debtor's surety was at least a question related to the bankruptcy case and was within the bankruptcy court's jurisdiction. Therefore, the creditor could not collaterally attack the injunction by its motion to execute in district court. *Id.*, at 312–14, 115 S.Ct. at

1501. This case at least implies that a bankruptcy court, as an Article I Court, has the authority to stay the hand of an Article III Court during the pendency of a bankruptcy case.

**5.** Section 1257 provides:

(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

28 U.S.C. § 1257(a).

*maa v. Maye,* 889 F.Supp. 68, 69 (N.D.N.Y. 1995) (where the court noted since plaintiff was clearly and solely seeking federal court intervention to correct an alleged mistake made by a city court, the district court lacked subject matter jurisdiction); *Rogers–Fink v. Cortland County Dept. Of Social Serv.,* 855 F.Supp. 45, 47 (N.D.N.Y.1994) (holding that the *Rooker–Feldman* doctrine precludes federal court review by a lower federal court of a state court decision, despite a party's contention that the state court decision was incorrect); *Carpenter v. Cummings,* 817 F.Supp. 596, 596 (D.Md.1993) (holding that the district court lacked authority to review final determinations by the Court of Appeals of Maryland, as such review can only be had in the United States Supreme Court); *In re Keenan,* 201 B.R. 263, 266–67 (Bankr. S.D.Cal.1996) (where the bankruptcy court refused to estimate a claim, holding that the *Rooker–Feldman* doctrine precluded the bankruptcy court from substituting its judgment for the judgment already reached by a state court jury and judge). The *Rooker–Feldman* doctrine is named for two prior Supreme Court cases which dealt with the authority of lower federal courts to review state court decisions. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In *Feldman* the Supreme Court held that lower federal courts possess no power whatsoever to sit in direct review of state court decisions. 460 U.S. at 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206. Review of such judgments can only be had in the United States Supreme Court. *Id.* In *Rooker* the Supreme Court held that no court of the United States other than the United States Supreme Court could "entertain a proceeding to reverse or modify the judgment of a state court." 263 U.S. at 416, 44 S.Ct. at 150. The Supreme Court went on to state that to do so would be an exercise of appellate jurisdiction, when the jurisdiction possessed by the District Courts is "strictly original." *Id.* If lower federal courts are prohibited from reviewing decisions of a state Supreme Court, surely they are not empowered by either principles of comity or statute to review a state court judgment prior to its appeal to any higher state court.

I find that the *Rooker–Feldman* doctrine denies subject matter jurisdiction to this Court to essentially sit as a Court of Appeals to a Texas State Court judgment. I note that in its Amended Rule 50 and/or Rule 59 Motion defendants actually request this Court to "Modify, Correct, or Reform the Judgment" of the Texas State Court. I not only find that I do not have subject matter jurisdiction over this proceeding, I also find the Texas Federal District Court was prohibited by the *Rooker–Feldman* doctrine from exercising subject matter jurisdiction over this proceeding. Therefore, I find that the Order issued by the Texas Federal District Court on August 16, 1996, denying plaintiff's motion to abstain and remand and transferring venue to this Court is void.

For all of the above reasons, plaintiff's Motion to Abstain and Remand will be granted. The motion for a new trial is remanded to the 236th District Court of Tarrant County, Texas, and the motion for writ of mandamus is remanded to the Second Texas Court of Appeals. To the extent necessary, the automatic stay in these Chapter 11 cases is modified for the limited purposes of allowing the Texas State District Court to rule on the Motion for a New Trial, and any appeal therefrom, and the Second Court of Appeals for the State of Texas to rule on defendants' writ of mandamus.

A recent Eighth Circuit case holds that an appeal by a debtor in which the debtor was originally a defendant is the continuation of an action against the debtor subject to the automatic stay. *Farley v. Henson,* 2 F.3d 273, 275 (8th Cir.1993). *See also* 11 U.S.C. § 363(c)(1). I, therefore, lift the automatic stay to allow the parties to proceed in the Texas State Courts. Furthermore, this Court has the authority to issue, *sua sponte,* any order necessary to more efficiently administer a proceeding related to a bankruptcy case. 11 U.S.C. § 105(a). *See also In re Elder–Beerman Stores Corp.,* 195 B.R. 1019,

1023 (Bankr.S.D.Ohio 1996) (holding that bankruptcy courts have the power to decide if relief from the stay is appropriate *sua sponte*); *In re Bellucci,* 119 B.R. 763, 779 (Bankr.E.D.Cal.1990) (holding that a bankruptcy court can use the authority vested in section 105(a) of the Bankruptcy Code to lift the automatic stay *sua sponte*); *Furness v. Lilienfield,* 35 B.R. 1006, 1010 (D.C.Md.1983) (holding that courts have considered and modified the automatic stay *sua sponte* when circumstances required).

An Order in accordance with this Memorandum Opinion will be entered this date.